Transport Manufacturing & Equipment Company (a Delaware Corporation), Transferee v. Commissioner. Transport Manufacturing & Equipment Company (an Illinois Corporation) v. Commissioner.
Transport Mfg. & Equipment Co. v. Commissioner
Docket Nos. 74952, 74953.
United States Tax Court
T.C. Memo 1968-189; 1968 Tax Ct. Memo LEXIS 107; 27 T.C.M. (CCH) 919; T.C.M. (RIA) 68189; August 29, 1968. Filed Guy A. Magruder, Jr., 15 W. 10th St., Kansas City, Mo., for the petitioners. Donald W. Geerhart, for the respondent. FORRESTER
Supplemental Memorandum Findings of Fact and Opinion FORRESTER, Judge: Our opinion in the above dockets was filed on July 14, 1964 ( Riss & Company, Inc., T.C. Memo. 1964-190). The principal issue remaining is the liability for interest of petitioner Transport Manufacturing & Equipment Company of Delaware (hereinafter *108 sometimes referred to as transferee petitioner). On September 14, 1960, respondent, under section 273(a) [1] of the Internal Revenue Code of 1939, [2] made a jeopardy assessment against transferee petitioner in the total amount of $3,301,998.11. This amount included both tax, penalties and accrued interest which respondent had determined was due from transferee petitioner's transferor, Transport Manufacturing & Equipment Company of Illinois, the other petitioner in this matter and sometimes referred to herein as transferor petitioner. After our opinion in the above dockets was filed, respondent abated the jeopardy assessment to the extent of $1,108,327.28 in tax, $350,753.33 in penalties and $527,083.21 in interest. *109 In his computations submitted to this Court under Rule 50 of our Rules of Practice, respondent, in accordance with section 297 of the Code, added interest on the unabated amount of the jeopardy assessment. [3] The interest added included interest 920 on that portion of the jeopardy assessment which represented the deficiency interest charged against the transferor. Transferee petitioner contends that respondent had no right to charge it with interest on such interest portion. *110 Section 6601(f)(2) of the Internal Revenue Code of 1954 prohibits the imposition of interest on the interest portion of a jeopardy assessment, but no similar provision existed in the 1939 Code, and it is well settled that for tax years subject to the 1939 Code, respondent may collect interest on deficiency interest. Fong v. United States, 368 F. 2d 325 (C.A. 9, 1966); Ginsburg v. United States, 278 F. 2d 470 (C.A. 1, 1960); United States v. Glasser, 287 F. 2d 433 (C.A. 7, 1961). Though the jeopardy assessment in the instant case was made under the 1939 Code, transferee petitioner contends that on the particular facts presented herein, respondent incorrectly included interest on interest in his computation submitted to us. It first argues, though not vigorously, that this Court does not have jurisdiction to decide questions of interest. We do have jurisdiction over interest in the instant case. Section 273(c)[4] of the Code specifically authorizes the Tax Court to redetermine "the entire amount of deficiency and all amounts assessed at the same time in connection therewith." (Emphasis supplied.) This authorization *111 extends to interest which has been assessed under that section. Riss & Co., 45 T.C. 230 (1965). Where an individual is before the Court as a transferee of assets, our jurisdiction to determine questions *112 of interest has been extended to all items of Federal interest as well as interest allowed to respondent under state statutes. In Louisiana & Arkansas Railway Co., 28 B.T.A. 153 (1933), affd. 70 F. 2d 286 (C.A.D.C. 1934), we pointed out that there is no expressed congressional policy to exclude our deciding questions concerning such interest. In holding that we had the general power to determine a transferee's liability for interest, we stated (pp. 155-156): When, therefore, it becomes necessary to consider the scope of the system of jurisprudence as to transferee liability, set up for the first time in the Revenue Act of 1926, section 280 et seq., Phillips v. Commissioner, 283 U.S. 589, there is no justification for confining such system within an assumed general purpose to keep interest out of the Board's focus. Unhampered by such a restriction, it is clear that as to a transferee the Commissioner may determine a liability not only for a deficiency but also for "interest, additional amounts, and additions to the tax provided by law," and that such a determination is subject to the same process as the determination of a deficiency, that is, *113 a proceeding in the Board for redetermination. * * * The Board has, in several earlier decisions in transferee proceedings, included interest in its determination, Henry Cappellini, 16 B.T.A. 802; Wayne Body Corp., 24 B.T.A. 524; Louis Costanzo, 16 B.T.A. 1294; J. E. Duval, 21 B.T.A. 1357. A fresh consideration of the question confirms the propriety of those decisions. Cf. Leo L. Lowy, 35 T.C. 393 (1960), and the cases cited therein. See also Estate of Samuel Stein, 37 T.C. 945 (1962), where we determined respondent's right to interest under a state law, where "the transferred assets are insufficient to pay the transferor's total liability." (See 37 T.C. 945, 961). 921 Transferee petitioner next contends that by virtue of a stipulation which he and respondent entered into prior to trial in the instant case, its maximum liability in this case is fixed as that of its transferor. The stipulation reads as follows: T.M. & E. of Delaware, petitioner in Docket No. 74952, is liable as transferee of the assets of T.M. & E. of Illinois for any deficiencies in income taxes and additions to the *114 tax, plus interest thereon as provided by law, which may be found by this Court to be due and owing from the said T.M. & E. of Illinois, petitioner in Docket No. 74953, for the taxable years 1949 to 1953, inclusive. We find nothing in the above which indicates that the stipulation was intended to limit transferee petitioner's liability. The plain words of the stipulation do no more than establish transferee petitioner's minimum liability. If the stipulation were intended to set a limit on its liability, words of limitation should have been used. In their absence we cannot find that any limitation of transferee petitioner's liability is implicit within the stipulation. We agree with respondent that the stipulation served only to remove the burden which section 6902(a) of the Internal Revenue Code of 1954 places on him. Section 6902 (a) provides that the burden of proof is on respondent to show that a petitioner is liable as a transferee of property. The above quoted stipulation, by fixing transferee petioner's liability as a transferee relieved respondent from presenting evidence thereon. We find and hold that it was not intended to do anything more. Transferee *115 petitioner's next contention is that the interest on interest called for by section 297 of the Code can only be collected if it received transferee assets sufficient to cover the same. It contends that the interest on interest amount is in addition to its transferor's liability and that (in the stipulation above) it is stipulated that it was liable only for that which its transferor was liable. Citing Commissioner v. Stern, 357 U.S. 39 (1958), it contends that under the circumstances here present, any liability it has for interest must be determined under state law, arguing that under the laws of the States of Illinois and Missouri respondent is prohibited from collecting interest on interest in the instant case. Transferee petitioner's reliance on Commissioner v. Stern, supra, is misplaced. In that case, the question before the court was whether certain life insurance proceeds represented transferee assets subject to a claim for the Federal income tax liability of a deceased transferor. The issue was whether state law or federal law controlled. The relevant language of the Code relating to the Commissioner's right to proceed against a transferee of assets *116 was section 311 of the 1939 Code. The Supreme Court in Commissioner v. Stern, supra, paraphrased the language of the section as follows (p. 42): "The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax… imposed upon the taxpayer by this chapter" shall be "assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this chapter…" The Supreme Court pointed out that the above language merely provided a procedural device for the Commissioner to collect amounts owed by a transferee. The Code does not define the "liability, at law or in equity," of a transferee. Therefore, in the absence of a specific Code provision on this point, the Court held that the "existence and extent" of the liability was to be determined under state law. Transferee petitioner contends that the above holding means that where respondent wishes to collect interest from a transferee, the right of the Commissioner to interest and the amount of interest allowable is to be determined under state law rather than federal. A similar argument was made by the taxpayers *117 in Leo L. Lowy, supra, where respondent had determined a transferee of assets liable for the transferor's deficiency in income taxes, plus interest on that amount from the date the taxes were payable by the transferor. Under New York law, interest accrued against the transferee only after the Commissioner sent the taxpayer a notice of transferee liability. In upholding respondent's determination, we pointed out that New York law had nothing to do with the amount of interest which respondent could assert as part of his claim. The state statute did determine whether or not a transferee was liable for a transferor's debts and the maximum amount of that liability, but insofar as the amount of the federal claim was concerned, the Internal Revenue Code had already made provision for the interest due. As we stated (35 T.C. 395): 922 To be sure, the liability of the transferee as such must arise under applicable State law, cf. Commissioner v. Stern, 357 U.S. 39, but the quantum of the creditor's right - i.e., the amount of tax due, the additions to tax for negligence or fraud, and the amount of interest applicable thereto - must, of necessity, be *118 determined in accordance with the Federal statute. Certainly, it is the Internal Revenue Code and not New York law which fixes the amount of deficiency in tax. And it is similarly the Internal Revenue Code, rather than State law, which spells out the right of the Government to the so-called penalties and interest. These amounts in the aggregate constitute the claim of the United States against the taxpayer-transferor and they similarly measure the claim against the transferred assets. We did note that where the transferred assets were insufficient to meet the full amount of the government's claim, state law could provide "for interest in respect of the transferred assets." But we pointed out that we looked to the state law in such instances because the Internal Revenue Code does not make provision for this type of interest. See Estate of Samuel Stein, supra. If the Code had provided for "interest in respect of transferred assets," we would have applied the federal statutes. In the instant case section 297 specifically provides that the individual who is jeopardy assessed and fails to pay the assessment within ten days is to pay interest at the rate of 6 percent on *119 the unpaid balance from the date of notice. There is no gap in the federal law as to liability for interest for one validly assessed. As pointed out in Patterson v. Sims, 281 F. 2d 577, 580 (C.A. 5, 1960) (involving a similar provision under section 294 of the 1939 Code), where the federal statute has spoken, there is no need to look to state law. Transferee petitioner's argument that its liability under section 297 is of a subsidiary nature and thus limited to that of its transferor has no basis. The liability is that of the individual assessed. In the instant case that individual was the transferee petitioner and it is primarily liable for the stated interest when it failed to pay the assessed amount when due, no matter what the value of the assets it received. Of course the maximum amount to which the interest applies is that amount which under state statutes subjects transferee petitioner to transferee liability. But in the instant case, the parties have stipulated that transferee petitioner's liability is at least equal to the amount which was jeopardy assessed by respondent. We hold that transferee petitioner is liable for the total interest on the jeopardy *120 assessment determined by respondent. It is extraneous to this determination to discuss the issue of the exact value of the transferee assets and we refrain from doing so. For similar reason we do not interpret the laws of Illinois and Missouri regarding interest. Both transferor petitioner and transferee petitioner have raised other issues which we decide as follows: Transferor petitioner paid a total of $142,042.61 toward its 1949 tax liability which liability totaled (as redetermined by us) $61,635.65. The instructions accompanying the payment were that the entire amount was to be credited against tax. In his Rule 50 computation respondent credited the payment against the transferor petitioner's income tax liability and determined an overpayment of $80,406.96. Against this amount he offset $37,025.85 representing transferor petitioner's deficiency interest which had been jeopardy assessed. The offset results in a net overpayment of $43,381.11. Transferor petitioner contends that by offsetting the jeopardy assessed interest amount against the overpayment, respondent failed to comply with its instructions. However, it fails to state how respondent's action works to its or transferee *121 petitioner's detriment. In light of the fact that interest accrues against jeopardy assessed interest as well as the tax due, we fail to see how respondent's action in crediting the payment to interest would result in any less interest accruing than if had been credited to tax for other years. Consequently, we adopt respondent's computation on this issue. In an effort to avoid paying interest on interest, transferee petitioner on January 18, 1967, sent a check for $258,000 to the district director of internal revenue, St. Louis, Missouri, with a letter instructing respondent to satisfy various amounts owed by transferor petitioner. The letter further requested that because transferor petitioner's liability was extinguished by the payments, jeopardy assessments against transferee petitioner should be abated by the full amount of the payment under sections 6861(c) and 6861(g) of the Internal Revenue Code of 923 1954 or 273(c) and 273(k) of the 1939 Code. Presumably, if respondent did abate the jeopardy assessments against transferee petitioner, there would no longer be any interest on interest. Respondent, instead of following the instructions of the letter, *122 treated the amount paid in as a cash bond and explained this treatment in a letter to transferee petitioner as follows: U.S. TREASURY DEPARTMENT i/nternal Revenue Service Office of Regional Commissioner FEB 14 1967 In Reply Refer To Appellate Division
P.O. Box 13606 Commerce Tower Station Kansas City, Mo. 64199 Transport Manufacturing & Equipment Company of Delaware, Transferee of Transport Manufacturing & Equipment Corporation of Illinois
c/o Guy A. Magruder, Jr. 1212 Fairfax Building Kansas City, Missouri 64105 Gentlemen: The St. Louis District Director's office informs us that they received your check of $258,000.00 on January 23, 1967. This money will be treated as a deposit in the nature of a cash bond for payment of taxes hereafter to be determined and assessed. If you elect to leave the payment on deposit until the deficiency is finally determined and assessed, the amount of the deposit, or so much of it as is necessary, will be applied in discharge of this liability. Under the authority of Rev. Proc. 64-13, C.B. 1964-1, 674, the running of interest on any amount of any deficiency that is satisfied by application of the advance *123 payment will be terminated on the date the payment is received. Any advance payment of interest, likewise, will be deposited and credited within the purview of this procedure, except interest on 1949 tax which already has been assessed. Very truly yours, /s/ Albert E. Sager Albert E. Sager Chief, Kansas City Branch Office Appellate Division, Midwest Region Copy to: Regional Counsel District Director, St. Louis
Transferee petitioner subsequently brought an action of mandamus against respondent (among others) to compel respondent to "accept payment of its liability for income taxes, penalties and interest for the years in question, and upon receipt thereof to make a finding that no jeopardy existed in respect to collection of tax due, and thereupon to abate the jeopardy assessment." ( Transport Manufacturing & Equipment Co. of Del. v. Trainor, 382 F. 2d 793 (C.A. 8, 1967)). The district court in which the action was brought dismissed the action for failure to state a claim upon which relief could be granted. On appeal the Eighth Circuit affirmed on the basis that the court lacked jurisdiction. In regard to the plea that the jeopardy assessment be abated, *124 the court stated (p. 798): We can not ascribe to the view that the continued existence of the jeopardy assessment is coextensive with appellant's outstanding tax liability. It would be illogical to accrue "interest on interest" under a valid jeopardy assessment, and then abate the same "ab initio" at the time a taxpayer finally seeks to settle his tax liability. In the instant case, transferee petitioner insists that we apply the $258,000 payment as per the instruction of the letter to the Commissioner. We see no reason to follow this procedure, as the total amount due is the same under either respondent's or petitioner's method. Apparently transferee petitioner feels that any reduction in the amount remaining due, subsequent to the jeopardy assessment, necessarily reduces the amount subject to jeopardy interest at the time of the assessment. But there is no such a fortiori relationship. The amount subject to jeopardy interest is the amount of the deficiency which is due at the time the assessment is made. Subsequent reductions of the deficiency by payment in whatever form do not alter the fact that the amount assessed is a "valid" debt of the one assessed at the time of assessment. *125 As the Eighth Circuit pointed out, in such a circumstance it would be illogical to find that valid interest could suddenly abate due to the form of payment which a taxpayer decided to make. There is no detriment to petitioners due to respondent's handling of the $258,000 amount, consequently we decline to interfere with his treatment of the payment. Transferee petitioner originally contended that the $258,000 payment constituted a valid tender which stopped all interest 924 pertaining to that amount from running after the tender. However, he now concedes that our finding that there was valid interest on interest due against transferee petitioner made his offer conditional and thus invalid to stop interest from accruing. The final contention of the petitioners is that periodic payments have been, and are continuing to be made on their behalf and that respondent has failed to show all such payments made subsequent to July 6, 1967. Respondent contends that all such payments have been, and will be properly credited in his computations for entries of decisions. We will entertain timely motions from petitioners if they disagree. Decisions will be entered in accordance with *126 respondent's computations. Footnotes
1. SEC. 273. JEOPARDY ASSESSMENTS. (a) Authority for Making. - If the Commissioner believes that the assessment or collection of a deficiency will be jeopardized by delay, he shall immediately assess such deficiency (together with all interest, additional amounts, or additions to the tax provided for by law) and notice and demand shall be made by the collector for the payment thereof. ↩
2. All years in issue are governed by the Internal Revenue Code of 1939, and except where otherwise noted, all references are to the Internal Revenue Code of 1939.↩
3. SEC. 297. INTEREST IN CASE OF JEOPARDY ASSESSMENTS. In the case of the amount collected under section 273(i) there shall be collected at the same time as such amount, and as a part of the tax, interest at the rate of 6 per centum per annum upon such amount from the date of the jeopardy notice and demand to the date of notice and demand under section 273(i), or, in the case of the amount collected in excess of the amount of the jeopardy assessment, interest as provided in section 292. If the amount included in the notice and demand from the collector under section 273(i)↩ is not paid in full within ten days after such notice and demand, then there shall be collected, as part of the tax, interest upon the unpaid amount at the rate of 6 per centum per annum from the date of such notice and demand until it is paid.
4. SEC. 273. JEOPARDY ASSESSMENTS. * * * (c) Amount Assessable Before Decision of Board. - The jeopardy assessment may be made in respect of a deficiency greater or less than that notice of which has been mailed to the taxpayer, despite the provisions of section 272 (f) prohibiting the determination of additional deficiencies, and whether or not the taxpayer has theretofore filed a petition with the Board of Tax Appeals. The Commissioner may, at any time before the decision of the Board is rendered, abate such assessment, or any unpaid portion thereof, to the extent that he believes the assessment to be excessive in amount. The Commissioner shall notify the Board of the amount of such assessment, or abatement, if the petition is filed with the Board before the making of the assessment or is subsequently filed, and the Board shall have jurisdiction to redetermine the entire amount of the deficiency and of all amounts assessed at the same time in connection therewith.↩